**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br>INVESTOR CHOICE ADVOCATES NETWORK,<br>PATRIOT 28 LLC, and<br>GEORGE R. JARKESY, JR.,<br><br>        Plaintiffs,<br><br>      v.<br><br>U.S. SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>        Defendant. | No. 3:23-cv-00402 |

**U.S. SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR SUMMARY JUDGMENT ON EXPEDITED TREATMENT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

III.   NATURE AND STAGE OF PROCEEDING .......................................... 2

IV.   SUMMARY OF ARGUMENT .................................................................... 4

V.    ARGUMENT ..................................................................................................... 4

     A.    Summary judgment is appropriate because no material facts are in dispute. 5

     B.    Plaintiffs did not satisfy the requirements for expedited processing. ........... 6

           1.    Plaintiffs have not demonstrated that they are primarily engaged in disseminating information. ............................................................... 7

           2.    Plaintiffs have not demonstrated that there is an urgency to inform the public concerning SEC activity. ................................................ 11

VI.   CONCLUSION ................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU of N. Cal. v. Dep't of Justice,* No. 04–4447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) .................................................................................................................. 9

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) ........................................................ passim

*Allied Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........................................................................................... 6, 7, 11

*Century Found. v. Devos*, 18-cv-1128(PAC), 2018 WL 3084065 (S.D.N.Y. June 22, 2018) ............................................................................................................................. 8

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) ................................................................................................. 5

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 13, 2022) .............................................................................. 5

*Eakin v. U.S. DOD*, No. SA-10-CV-0784 FB (NN), 2011 WL 5925570 (W.D. Tex. Nov. 28, 2011) ....................................................................................................................... 15

*Elec. Priv. Info. Ctr. v. DOD*, 355 F. Supp. 2d 98 (D.D.C. 2004) ................................ 4, 12

*Energy Pol'y Advocs. v. U.S. DOI*, No. 21-1247 (JEB), 2021 WL 4306079 (D.D.C. Sept. 22, 2021) ...................................................................................................................... 5

*Freedom Coal. of Drs. for Choice v. Ctrs. for Disease Control & Prevention*, 2:23-CV-102-Z**,** 2024 WL 69084 (N.D. Tex. Jan. 5, 2024) ...................................................... 5, 8

*Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270 (D.D.C. 2012) ......................... 7, 10

*Treatment Action Grp. v. FDA*, No. 15-cv-976 (VAB), 2016 WL 5171987 (D. Conn.

   Sept. 20, 2016) ........................................................................................ 11, 12, 13

*Verde v. FAA*, 287 F. Supp. 3d 661 (S.D. Tex. 2018) ........................................ 5

*Wadelton v. Dep't of State*, 941 F. Supp. 2d 120 (D.D.C. 2013) ......................... 13, 14, 15

**STATUTES**

5 U.S.C. § 552(a)(6)(E)(i) ................................................................................. 6

5 U.S.C. § 552(a)(6)(E)(iii) ............................................................................... 5

5 U.S.C. § 552(a)(6)(E)(v) ................................................................................. 6

**RULES**

Fed. R. Civ. P. 56(a) .......................................................................................... 4

Fed. R. Civ. P. 56(c)(1) ..................................................................................... 5

**FEDERAL REGULATIONS**

17 C.F.R. § 200.80(d)(7) ................................................................................... 6

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 104-795 (1996) ........................................................................ 6, 7

**OTHER AUTHORITIES**

*About ICAN*, ICAN, https://www.icanlaw.org/about-3 (last visited Apr. 3, 2024) ........... 8

*Commission Statement Relating to Certain Administrative Adjudications*, U.S. Sec. &

   Exchange Comm'n (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-

   statement-relating-certain-administrative-adjudications ............................................. 1, 2

*Mission*, New Civil Liberties Alliance, https://nclalegal.org/about/ (last visited Apr.

   3, 2024) ........................................................................................................ 8

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S.

SEC. & EXCHANGE COMM'N (June 2, 2023),

https://www.sec.gov/news/statement/second-commission-statement-relating-certain-

administrative-adjudications ......................................................................... 2, 13

## I.    <u>INTRODUCTION</u>

Defendant U.S. Securities and Exchange Commission ("SEC") hereby moves for partial summary judgment under Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") litigation.  The SEC requests that this Court grant summary judgment in its favor on Plaintiffs' claim that they were entitled to expedited processing of their FOIA request.

## II.    <u>BACKGROUND</u>

On April 5, 2022, the SEC issued a statement explaining that it had "identified a control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications." *Commission Statement Relating to Certain Administrative Adjudications*, U.S. SEC. & EXCHANGE COMM'N (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications ("April 5 Statement").  The April 5 Statement states that the SEC had "commence[d] a comprehensive internal review to assess the scope and potential impact of the issue" and that it was "releasing the findings of that review as it relates to two adjudicatory matters currently in litigation in federal court."  *Id*.  The statement describes the internal review and says that it is "being conducted by experienced investigative staff from the Division of Examinations under the supervision of the Commission's General Counsel."  *Id*.  The statement also describes the role in the internal review of consulting firm Berkeley Research Group, LLC ("BRG").  *Id.*  The statement explained that, "[t]ogether, the internal team and BRG staff are in the process of performing a comprehensive review of the facts surrounding the control deficiency and

assessing its potential impact on administrative adjudicatory matters." *Id.* The majority of the statement discusses the impact of the control deficiency on two administrative proceedings that relate to matters then-pending in federal court, *SEC v. Cochran*, No. 21-1239 (S. Ct.), and *Jarkesy v. SEC*, No. 20-61007 (5th Cir.). *Id.*

On June 2, 2023, the SEC issued a second statement regarding the control deficiency related to the separation of the SEC's enforcement and adjudicatory functions. *See Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. SEC. & EXCHANGE COMM'N (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications ("Second Statement"). The Second Statement and its five exhibits provide additional information about the SEC's internal review of the control deficiency and information about *Cochran*, *Jarkesy*, and other matters that were pending before the Commission. *Id.*

## III.   <u>NATURE AND STAGE OF PROCEEDING</u>[1]

On November 8, 2023, the SEC's Office of FOIA Services ("FOIA Office") received a FOIA request, via counsel, from Plaintiffs. SMF ¶3. On November 9, 2023, the FOIA Office received, via counsel, a "corrected" FOIA request from Plaintiffs. SMF ¶5. The FOIA request seeks nine categories of records concerning the "'control deficiency' relating to the SEC's system for administrative adjudications." SMF ¶3. In

---

[1] The SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment on Expedited Treatment is referred to herein as "SMF." Plaintiffs' November 8, 2023 FOIA request, as corrected on November 9, 2023, is referred to herein as "Ex. A."

their FOIA request, Plaintiffs argued that there is a "compelling need for expedited

processing." *See* SMF ¶10; Ex. A at 4-8.

In correspondence dated November 14, 2023, the FOIA Office acknowledged

Plaintiffs' FOIA request and, among other things, denied Plaintiffs' expedited processing

request:

> Under the SEC's FOIA Rule 17 CFR § 200.80(d)(7), this Office shall grant
> a request for expedited processing if the requester demonstrates a
> compelling need for the records. "Compelling need" means that a failure to
> obtain the requested records on an expedited basis could reasonably be
> expected to pose an imminent threat to an individual's life or physical
> safety or, if the requester is primarily engaged in disseminating
> information, by demonstrating that an urgency to inform the public of
> actual or alleged Federal government activity exists. A compelling need
> shall be demonstrated by a statement, certified to be true and correct to the
> best of the requester's knowledge and belief. In my view, a compelling
> need has not been demonstrated. Therefore, we are processing your request
> under our normal guidelines.

SMF ¶6.  The letter denying the request stated that Plaintiffs could appeal the decision to

the SEC's Office of the General Counsel, but Plaintiffs did not appeal the decision.  SMF

¶7.

On December 20, 2023, Plaintiffs filed their complaint in this lawsuit concerning

their FOIA request.  *See* ECF 1.  Plaintiffs asserted three claims for relief seeking

(1) expedited processing, (2) production of records, and (3) costs and fees.  *See id.*

The SEC filed its answer to Plaintiffs' complaint on February 5, 2024 and its

amended answer on February 8, 2024.  ECF 5, 6.  In response to Plaintiffs' claim seeking

the production of records, the SEC asserted the affirmative defense that Plaintiffs' claim

should be dismissed because Plaintiffs filed that claim prematurely in violation of the

FOIA.  *See* ECF 6 at 12-13.  On February 9, 2024, Plaintiffs filed another lawsuit

asserting their claim seeking the production of records in connection with their FOIA

request.  *See* Complaint, *NCLA et al. v. SEC*, No. 24-cv-0042 (S.D. Tex. Feb. 9, 2024),

ECF No. 1.  The SEC understands that Plaintiffs intend to rely on the February 9, 2024

complaint to address their claim regarding the production of records.  Thus, the parties

agreed that, on summary judgment, the issue to be resolved in this case is whether the

SEC appropriately denied Plaintiffs' request for expedited treatment of their FOIA

request.  *See* ECF 7 at ¶7.

## IV.    <u>SUMMARY OF ARGUMENT</u>

Summary judgment is appropriate in this FOIA litigation because no material facts

are in dispute, and the SEC is entitled to judgment as a matter of law with respect to its

denial of Plaintiffs' request for expedited processing of their FOIA request.  Specifically,

Plaintiffs have failed to show a compelling need for the requested materials because they

have not demonstrated that they are "persons primarily engaged in disseminating

information" or that there is an "urgency to inform the public" about the subject of their

request, as required by the FOIA.  "[E]xpedition of FOIA requests is to be sparingly

granted."  *Elec. Priv. Info. Ctr. v. DOD*, 355 F. Supp. 2d 98, 104 (D.D.C. 2004).  The

FOIA request at issue here is no exception.

## V.    <u>ARGUMENT</u>

Summary judgment is warranted where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  The party "asserting that a fact cannot be or is genuinely

disputed must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Energy Pol'y Advocs. v. U.S. DOI*, No. 21-1247 (JEB), 2021 WL 4306079, at *2 (D.D.C. Sept. 22, 2021). Most FOIA cases are resolved on motions for summary judgment. *Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *1 (D.D.C. Nov. 21, 2022); *Verde v. FAA*, 287 F. Supp. 3d 661, 667 (S.D. Tex. 2018).

"[A]n agency's decision to deny a request for expedited processing is subject to *de novo* judicial review." *Energy Pol'y Advocs.*, 2021 WL 4306079, at *2; *see also Freedom Coal. of Drs. for Choice v. Ctrs. for Disease Control & Prevention*, 2:23-CV-102-Z, 2024 WL 69084, at *6 (N.D. Tex. Jan. 5, 2024) ("Determinations by the district court are made de novo."). Judicial review of an agency's denial of a request for expedited processing "shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). "The party seeking expedited processing bears the burden of showing that expedition is appropriate." *Energy Pol'y Advocs.*, 2021 WL 4306079, at *2.

**A. Summary judgment is appropriate because no material facts are in dispute.**

"FOIA cases do not ordinarily involve disputed facts." *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189, at *3

(D.D.C. Sept. 13, 2022).  Like in most FOIA cases, the main dispute in this case is legal in nature, namely whether the SEC appropriately denied Plaintiffs' request for expedited processing of their FOIA request.  *See* ECF 7 at ¶7.

### B.  Plaintiffs did not satisfy the requirements for expedited processing.

The Electronic Freedom of Information Act Amendments of 1996 ("1996 Amendments") "created a procedure by which applicants could obtain expedited processing of their FOIA requests upon a showing of a compelling need for the requested materials."  *Allied Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017); 5 U.S.C. § 552(a)(6)(E)(i) (FOIA provides for expedited processing when the FOIA requester "demonstrates a compelling need"); 17 C.F.R. § 200.80(d)(7) (SEC regulations for expedited processing).  Compelling need for purposes of expedited processing means: (a) "that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (b) "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v); 17 C.F.R. § 200.80(d)(7).  In their FOIA request, Plaintiffs sought expedited processing as "person[s] primarily engaged in disseminating information" who believe there is an "urgency to inform the public concerning actual or alleged Federal Government activity."  *See* SMF ¶11; Ex. A at 8.

"The specified categories for compelling need are intended to be narrowly applied."  *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No.

104-795, at 26 (1996)).  "Given the finite resources generally available for fulfilling
FOIA requests, unduly generous use of the expedited processing procedure would
unfairly disadvantage other requesters who do not qualify for its treatment."  H.R. Rep.
No. 104-795, at 26.

 Here, Plaintiffs failed to show their entitlement to expedited processing because
their FOIA request did not demonstrate that Plaintiffs primarily engage in disseminating
information or that there is an urgency to inform the public about the control deficiency.

   **1.** **Plaintiffs have not demonstrated that they are primarily engaged in
disseminating information.**

 The legislative history of the 1996 Amendments emphasizes that:

> A person "primarily engaged" in the dissemination of information should
> not include individuals who are engaged only incidentally in the
> dissemination of information. The standard of "primarily engaged" requires
> that information dissemination be the main activity of the requestor,
> although it need not be their sole occupation. A requestor who only
> incidentally engages in information dissemination, besides other activities,
> would not satisfy this requirement.

H.R. Rep. No. 104-795, at 26.  "[G]iven Congressional and D.C. Circuit direction that the
category [of who qualifies as a person primarily engaged in information dissemination]
be narrowly construed, [the] Court must be cautious in deeming non-media organizations
as persons primarily engaged in information dissemination." *Landmark Legal Found. v.
EPA*, 910 F. Supp. 2d 270, 275-76 (D.D.C. 2012); *see also Allied Progress*, 2017 WL
1750263, at *4 ("organizations have been held to not qualify, unless information
dissemination is also their main activity, and not merely incidental to other activities that
are their actual, core purpose").

Plaintiffs' FOIA request does not claim that Plaintiffs Jarkesy and Patriot28, LLC are primarily engaged in disseminating information.  *See* SMF ¶11; *see generally* Ex. A. Rather, Plaintiffs' request asserts that NCLA and ICAN satisfy the standard.  *See* SMF ¶11; *see* Ex. A at 8.  That argument fails, as the FOIA request shows that NCLA and ICAN's main purpose is legal advocacy, not information dissemination.

The FOIA request states "NCLA is a nonpartisan, nonprofit civil rights group founded to protect constitutional freedoms from violations by the Administrative State." SMF ¶12; Ex. A at 2.  Similarly, the request asserts "ICAN is a nonprofit public interest litigation organization dedicated to breaking down barriers to entry to capital markets and pushing back on overreach by" the SEC.  SMF ¶13; Ex. A at 3; *see Century Found. v. Devos*, 18-cv-1128(PAC), 2018 WL 3084065, at *5 (S.D.N.Y. June 22, 2018) ("mission statements . . . that do not specify whether information dissemination is the organization's primary activity fail to satisfy the test"); *cf. Freedom Coalition*, 2024 WL 69084, at *14 (expedited treatment appropriate where "nonprofit entity 'was formed and exists for the sole purpose of *obtaining and disseminating to the public* the [ ] data'") (emphasis in original).[2]

---

[2] The FOIA request refers to NCLA's and ICAN's websites.  *See* SMF ¶28; Ex. A at 7. Tellingly, neither NCLA's nor ICAN's mission statements as described on their websites involve information dissemination.  *See Mission*, NEW CIVIL LIBERTIES ALLIANCE, https://nclalegal.org/about/ (last visited Apr. 3, 2024) ("NCLA is a nonpartisan, nonprofit civil rights group founded by prominent legal scholar Philip Hamburger to protect constitutional freedoms from violations by the Administrative State. NCLA's public-interest litigation and other pro bono advocacy strive to tame the unlawful power of state and federal agencies and to foster a new civil liberties movement that will help restore Americans' fundamental rights."); *see About ICAN*, ICAN, https://www.icanlaw.org/about-3 (last visited Apr. 3, 2024) ("ICAN's mission is to break down barriers to entry to

Only after describing the entities' litigation functions does the request state that "NCLA is also a media organization that is primarily engaged in disseminating information through litigation and extensive messaging and advocacy to the public" and that "ICAN is an organization that broadly disseminates information to the public about unconstitutional statutes, legal action and conduct by the SEC that exceeds its statutory authority and the confines of the U.S. Constitution."  SMF ¶¶12-13; Ex. A at 2-3. Though the request repeatedly asserts that NCLA and ICAN disseminate information (as the FOIA standard requires), the request also makes clear that a key means of disseminating information is by litigating cases.  The request reveals that they "are both involved in legal advocacy of constitutional rights by those impacted by SEC regulation and litigation."  SMF ¶25; Ex. A at 6.  Indeed, the request states "[a]s a part of [its] mission," NCLA represented Michelle Cochran and Raymond Lucia, both allegedly "affected by the SEC's Control Deficiency," and also "filed an amicus brief in the Jarkesy case."  SMF ¶12; Ex. A at 2.[3]  ICAN also "filed an amicus brief in the *Jarkesy* case."  SMF ¶13; Ex. A at 3.  Courts have denied expedited processing to groups engaged in both litigation and information dissemination.  *See ACLU of N. Cal. v. Dep't of Justice*, No. 04-4447 PJH, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) ("while dissemination of information may be *a* main activity of ACLU-NC, there is no showing

_____

capital markets and push back against the overreach of the Securities and Exchange Commission.").

[3] Notably, the request states that NCLA submitted the FOIA request both on behalf of itself and its clients Michelle Cochran and Raymond Lucia.  SMF ¶3; Ex. A at 1.

that it is *the* main activity") (emphasis in original); *Landmark*, 910 F. Supp. 2d at 276 (entity not primarily engaged in information dissemination where it stated that "'*as part of* its mission as a tax-exempt, public interest law firm, [it] *investigates*, *litigates*, and publicizes instances of improper and/or illegal government activity'" and that "'[*a*]*mong* [its] primary activities is to disseminate to the public about the conduct of governmental agencies'") (emphasis in original).

Though the request states that NCLA and ICAN issued "articles," "reports," and "analyses" to the public, it also explains that they concern the *Cochran*, *Lucia*, and *Jarkesy* "cases, SEC administrative adjudication, and the Control Deficiency." SMF ¶¶12-13; Ex. A at 2-3; *see also* SMF ¶24; Ex. A at 7 ("both organizations post and create expert analysis and original content regarding the operations and activities of the SEC (and in the case of NCLA, other agencies) *and the results of their respective legal advocacy*") (emphasis added). Indeed, the request explains that the "broad media following of [the] Jarkesy case" has "create[ed the] opportunity to broadly disseminate information about the SEC and its activities." SMF ¶14; Ex. A at 4. As such, the request makes clear that any public dissemination of information by NCLA and ICAN is about their involvement in litigation and is incidental to the primary function of these entities, which is legal advocacy. *See Landmark*, 910 F. Supp. 2d at 276 (court should not "allow nearly any organization with a website, newsletter, or other information distribution channel to qualify as primarily engaged in disseminating information"). NCLA and ICAN's mere "intent and [ ] ability to convey any information obtained through this request to the public" (SMF ¶28; Ex. A at 7) does not establish that they are primarily

engaged in information dissemination.  *See Allied Progress*, 2017 WL 1750263, at *4

("the statutory language plainly speaks to the general type of activity in which the

requestor is 'primarily engaged,' and not merely what the requestor will do in the

future").[4]

Because the request does not show that Plaintiffs are primarily engaged in

disseminating information, Plaintiffs have no entitlement to expedited processing as

persons primarily engaged in the dissemination of information.

### 2.   Plaintiffs have not demonstrated that there is an urgency to inform the public concerning SEC activity.

Even if Plaintiffs could show that they were primarily engaged in the

dissemination of information, their claim would fail because they do not show that there

is an urgency to inform the public through the requested records.  "[I]n determining

whether requestors have demonstrated 'urgency to inform,' and hence 'compelling need,'

courts must consider at least three factors: (1) whether the request concerns a matter of

current exigency to the American public; (2) whether the consequences of delaying a

response would compromise a significant recognized interest; and (3) whether the request

concerns federal government activity."  *Al-Fayed*, 254 F.3d at 310.  Additionally, the

"'credibility of a requestor' is a relevant consideration."  *Id.* at 311.  "[T]o show that a

request concerns a matter of exigency to the American public and that there is a resulting

---

[4] To the extent there has been "broad media following" of Jarkesy himself, "[i]t is also not enough that a 'plaintiff has been the object of media attention, and has at times provided information to the media.'"  *Treatment Action Grp. v. FDA*, No. 15-cv-976 (VAB), 2016 WL 5171987, at *7 (D. Conn. Sept. 20, 2016).

urgency to inform the public, a requestor should be able to show that records are 'the subject of a currently unfolding [news] story.'" *Treatment Action Grp.*, 2016 WL 5171987, at *8.

Plaintiffs have not shown how their FOIA "request concerns a matter of current exigency to the American public" or how "delaying a response would compromise a significant recognized interest." First, Plaintiffs claim that "[t]here has been substantial recent public interest in the Control Deficiency" (SMF ¶22; Ex. A at 6) but point to only two 2023 Wall Street Journal articles in support. SMF ¶¶20-21; Ex. A at 5 n.4 & n.7 (citing one June 2, 2023 article twice); 6 n.9 (citing one October 13, 2023 opinion). Plaintiffs instead focus on "substantial media attention" on the *Jarkesy* Supreme Court case (*see* SMF ¶23; Ex. A at 6), but Plaintiffs provide no evidence that the control deficiency is a topic of interest for the media covering *Jarkesy* or that the Supreme Court seeks information about the control deficiency. *See Elec. Priv. Info. Ctr*, 355 F. Supp. 2d at 102 ("The fact that Plaintiff has provided evidence that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that Plaintiff demonstrate interest in the specific subject of Plaintiff's FOIA request, the Verity K2 Enterprise software program."). Claiming repeatedly that the records sought by the FOIA request are "absolutely necessary" for the "public interest" (*see* SMF ¶¶30, 32; *see* Ex. A at 6, 8, 9) does not make it so. *See Treatment Action Grp.*, 2016 WL 5171987, at *8 ("Neither claiming that requested information will benefit the general 'health and wellbeing of the public' nor citing '[t]he public's right to know' is sufficient to show that

12

a matter is of exigency to the American public.").[5]  Without "evidence in the record that there is substantial interest, either on the part of the American public or the media," Plaintiffs cannot "demonstrate that the request concerns a matter of current exigency." *Al-Fayed*, 254 F.3d at 311; *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013) ("Plaintiffs' submission of one article, a series of posts on a specialized blog, and plaintiff[']s representation that it 'intends' to publish a story do not come close to demonstrating a comparable level of media interest.").

Plaintiffs' request also reveals that the control deficiency is not a "'breaking news story of general public interest,'" but "rather [] one that only concerns a specialized audience."  *See Treatment Action Grp.*, 2016 WL 5171987, at *8.  The control deficiency is not "breaking news": it "was first disclosed by the SEC on April 5, 2022," the SEC engaged in an internal review relating to the control deficiency, and the SEC released its Second Statement about the control deficiency in June 2023.  *See* SMF ¶17; *see* Ex. A at 5; *see* Second Statement, *supra*.  Plaintiffs, however, did not ask for expedited processing of the current FOIA request until November 2023.  *See* SMF ¶10; Ex. A at 4-8.  Indeed, NCLA's and ICAN's prior FOIA requests for records about the control deficiency (submitted respectively in July 2022 and June 2023) did not contain requests for expedited treatment, and, though Jarkesy sought expedited treatment in his September 2022 request, he did not assert such a claim in the related complaint.  SMF ¶¶1-2, 15-16;

---

[5] Plaintiffs cited *Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) and *Judicial Watch v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) (SMF ¶29; Ex. A at 7), but *Carney* was decided two years before the FOIA was amended to include expedited processing, and both cases addressed the "public interest" only in the context of fee waivers.

Ex. A at 4-5; Complaint, *Jarkesy v. SEC*, 3:22-cv-405 (S.D. Tex. Nov. 28, 2022), ECF No. 1.  Plaintiffs' claim of urgency is belied by the years that have passed since the SEC publicly disclosed the control deficiency.  *Al-Fayed*, 254 F.3d at 311 (request for records concerned events that "occurred two to three years before plaintiffs made their requests for expedited processing" so "[a]lthough these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story"); *Wadelton*, 941 F. Supp. 2d at 123 (no urgency to inform where "OIG conducted an investigation" three years before opinion and there was "ongoing GAO investigation" because, though "an ongoing GAO investigation indicates that *someone* is concerned about this topic," "arcane aspects of the functioning of the federal government . . . could hardly be said to be of great interest to the American public") (emphasis in original).

Plaintiffs' request shows that they and their clients, not the American public, are interested in the control deficiency.  *See, e.g.*, SMF ¶¶12, 16, 23; Ex. A at 2 (NCLA represented Cochran and Lucia who were purportedly "directly affected by the SEC's Control Deficiency"), 4 (NCLA submitted FOIA request and related lawsuit "to enforce its rights to the documents while Cochran's case was progressing through the Supreme Court"), 6 ("Jarkesy, along with at least two of NCLA's clients, are directly impacted by the Control Deficiency.").  Read broadly, the request might show that the respondents in "42 enforcement cases" dismissed by the SEC are interested in the control deficiency (*see* SMF ¶18; *see* Ex. A at 5), but that limited group is not the general American public. Plaintiffs do not explain how the granular request "designed to capture records that will reveal the breadth of the Control Deficiency, how the data breaches occurred and by

whom, how the data breaches were discovered, what information was breached and whether the evidence supports the SEC's claim that the data breaches did not affect the pending cases" is a pressing current issue for anyone. SMF ¶27; Ex. A at 6-7; *see Wadelton*, 941 F. Supp. 2d at 123 ("courts have found a 'compelling need' to exist when the subject matter of the request was central to a pressing issue of the day" like "public debate over the renewal of the USA PATRIOT Act," "a breaking news story about domestic surveillance of anti-war protesters," or "an active debate over the reauthorization of certain Voting Rights Act provisions"); *Eakin v. U.S. DOD*, No. SA-10-CV-0784 FB (NN), 2011 WL 5925570, at *7 (W.D. Tex. Nov. 28, 2011) (finding no urgent need under DOD regulations and noting "[a]n example of breaking news would be that the U.S. military is making mistakes and misrepresentations about the recovery of service members who die in Iraq and Afghanistan"), *report and recommendation adopted*, 2012 WL 13136083 (W.D. Tex. Jan. 23, 2012). Indeed, Plaintiffs concede that the SEC administrative cases "directly at issue in the Control Deficiency" are "concluded," and, with respect to the only remaining "current" case, Plaintiffs do not explain how the requested records would be necessary at this late stage in the *SEC v. Jarkesy* Supreme Court case. *See* SMF ¶¶26, 31; *see* Ex. A at 6, 7.

Plaintiffs also claimed that their FOIA request was "designed to capture records relevant to the interest of the Supreme Court to have access to all pertinent information while deciding the issues pending in the Jarkesy case." SMF ¶31; Ex. A at 7. Plaintiffs, however, made only general and vague statements about the control deficiency's relevance to *Jarkesy*. They also failed to point to any specific issues to which the control

deficiency is relevant or explain why the Supreme Court might consider the control deficiency in addressing the issues before it.  Indeed, as Plaintiffs concede, oral argument before the Supreme Court in *SEC v. Jarkesy* (22-859) already occurred on November 29, 2023.  SMF ¶14; Ex. A at 4.

Finally, Plaintiffs "have not demonstrated any 'significant adverse consequence' that would result if their request for expedited processing of these or any other documents were denied, and they therefore received the documents later rather than sooner."  *Al-Fayed*, 254 F.3d at 311.  As Plaintiffs explained, the SEC already "dismiss[ed] 42 enforcement cases," including an "administrative case against [NCLA's client] Michelle Cochran."  SMF ¶18; Ex. A at 5.  Additionally, oral argument before the Supreme Court in *Jarkesy* already occurred.  SMF ¶31; Ex. A at 7.

Because Plaintiffs failed to provide evidence that their FOIA request concerns a matter of current exigency to the American public, or that consequences of delaying a response would compromise a significant recognized interest, they did not establish urgency to inform the public.  As such, the SEC's denial of expedited treatment would be proper even if Plaintiffs were primarily engaged in the dissemination of information.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for partial summary judgment.

16

Dated:  April 5, 2024

Respectfully submitted,

/s/ *Alexandra Verdi*
Alexandra Verdi
NY Reg. No. 5480934
S.D. Tex. No. 3821611
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*