**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE, INVESTOR CHOICE ADVOCATES NETWORK, PATRIOT 28 LLC, and GEORGE R. JARKESY, JR., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. SECURITIES AND EXCHANGE COMMISSION, <br><br> Defendant. | No. 3:23-cv-00402 |

### REPLY MEMORANDUM IN SUPPORT OF THE SEC'S MOTION FOR SUMMARY JUDGMENT ON EXPEDITED TREATMENT

### AND

### IN OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT ON EXPEDITED TREATMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

     A.    *De novo* review is appropriate here. ............................................................ 1

     B.    Plaintiffs have not demonstrated that they are primarily engaged in disseminating information. .............................................................................. 5

     C.    Plaintiffs have not demonstrated that there is an urgency to inform the public concerning SEC activity. .................................................................. 16

     D.    No material facts are in dispute. ................................................................. 22

III.   CONCLUSION .................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU of N. Cal. v. Dep't of Justice*, No. 04-4447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ........................................................................................................ 6, 20

*ACLU v. U.S. DOJ*, 321 F. Supp. 2d 24 (D.D.C. 2004) ...................................... 2, 4, 15, 18

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) ................................................ 3, 4, 16, 20

*Allied Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........................................................................................ 8, 13

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32 (D.D.C. 2020) ...................................................................................................... 20

*Austin Sanctuary Network v. U.S. Immigr. & Customs Enf't*, 20-cv-01686 (LJL), 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022) ......................................................... 14

*Bloomberg L.P. v. U.S. FDA*, 500 F. Supp. 2d 371 (S.D.N.Y. 2007) ............................... 18

*Brennan Ctr. for Justice at NYU Sch. of Law v. DOC*, 498 F. Supp. 3d 87 (D.D.C. 2020) ........................................................................................ 14, 18, 21, 22

*Century Found. v. Devos*, 18-cv-1128(PAC), 2018 WL 3084065 (S.D.N.Y. June 22, 2018) ................................................................................................................... 6

*Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 436 F. Supp. 3d 354 (D.D.C. 2020) ................................................................................................... 2, 3

*Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 870 F. Supp. 2d 70 (D.D.C. 2012) .... 15

*Cole v. FBI*, No. 13-cv-01205 (CRC), 2015 WL 4622917 (D.D.C. July 31, 2015) ......... 21

*Ctr. for Nat'l Sec. Studies v. U.S. DOJ*, 215 F. Supp. 2d 94 (D.D.C. 2002) .................... 15

*Del. Dep't of Nat. Res. & Env't Control v. U.S. Army Corp of Eng'rs*, 722 F. Supp. 2d

535 (D. Del. 2010) ........................................................................... 10

*Elec. Priv. Info. Ctr. v. DOD*, 355 F. Supp. 2d 98 (D.D.C. 2004) ................................... 20

*Elec. Priv. Info. Ctr. v. DOD*, 241 F. Supp. 2d 5 (D.D.C. 2003) ..................................... 15

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*,

419 F. Supp. 3d 82 (D.D.C. 2019) ......................................................... 15, 17

*Elec. Priv. Info. Ctr. v. U.S. DOJ*, 322 F. Supp. 2d 1 (D.D.C. 2003) ............................ 2, 3

*Elec. Priv. Info. Ctr. v. U.S. DOJ*, 416 F. Supp. 2d 30 (D.D.C. 2006) ............................ 15

*FCC v. Fox TV Stations, Inc.*, 556 U.S. 502 (2009) .................................................. 4

*Judicial Watch v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ........................................ 12

*Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270 (D.D.C. 2012) ........................ 8, 13

*Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ............. 13

*Legal Eagle, LLC v. NSC Records Access & Info. Sec. Mgmt. Directorate*, No. 20-1732

(RC), 2021 WL 1061222 (D.D.C. March 18, 2021) ...................................... 4

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........... 4

*Protect Democracy Project, Inc. v. U.S. DOD*, 263 F. Supp. 3d 293

(D.D.C. 2017) ................................................................ 13, 15, 17

*Protect Democracy Project, Inc. v. U.S. DOJ*, 498 F. Supp. 3d 132 (D.D.C. 2020) ........ 14

*Treatment Action Grp. v. FDA*, No. 15-cv-976 (VAB), 2016 WL 5171987 (D. Conn.

Sept. 20, 2016) ............................................................... 17, 18

*United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001) ............................ 4

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................................... 4

iii

*Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) ..................... 20

**STATUTES**

5 U.S.C. § 552(a)(6)(E)(i) ............................................................................. 2

5 U.S.C. § 552(a)(6)(E)(iii) ........................................................................... 2

5 U.S.C. § 552(a)(6)(E)(v) ......................................................................... 2, 3

**RULES**

Fed. R. Civ. P. 56(c)(1) ............................................................................... 22

**FEDERAL REGULATIONS**

17 C.F.R. § 200.80(d)(7) .............................................................................. 3

**OTHER AUTHORITIES**

*About ICAN*, ICAN, https://www.icanlaw.org/about-3 (last visited May 1, 2024) ............ 9

*Amicus Briefs*, ICAN, https://www.icanlaw.org/amicusbriefs

    (last visited May 1, 2024) ...................................................................... 9

*Amicus Briefs*, NCLA, https://nclalegal.org/amicus-briefs (last visited May 1, 2024)..... 12

*Cases*, ICAN, https://www.icanlaw.org/cases (last visited May 1, 2024) ......................... 9

*Case Summaries*, NCLA, https://nclalegal.org/cases-summaries-2 (last visited May 1,

    2024) ............................................................................................. 12

*Frequently Asked Questions*, NCLA, https://nclalegal.org/faq/

    (last visited May 1, 2024) ...................................................................... 12

*Homepage*, ICAN, https://www.icanlaw.org/ (last visited May 1, 2024) .......................... 9

*Homepage*, NCLA, https://nclalegal.org (last visited May 1, 2024)................................ 12

*In the News*, NCLA, https://nclalegal.org/in-the-news (last visited May 1, 2024) ........... 13

Jack Fitzhenry & GianCarlo Canaparo, *3 Supreme Court Cases Could Shake Up the Administrative State*, HERITAGE FOUNDATION (Aug. 29, 2023), https://www.heritage.org/courts/commentary/3-supreme-court-cases-could-shake-the-administrative-state ....................................................................................................... 19

*Mission*, NCLA, https://nclalegal.org/about (last visited May 1, 2024) .......................... 12

*Press Mentions*, ICAN, https://www.icanlaw.org/general-8 (last visited May 1, 2024) .... 9

*Press Releases*, NCLA, https://nclalegal.org/press-releases (last visited May 1, 2024)... 13

## I.    <u>INTRODUCTION</u>

Defendant U.S. Securities and Exchange Commission ("SEC") submits this memorandum in further support of its Motion for Summary Judgment on Expedited Treatment, ECF 9 ("Memo"), and in opposition to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment on Expedited Treatment, ECF 10 ("Opp."). Plaintiffs now downplay the legal advocacy in which both NCLA and ICAN engage, but it is clear that neither NCLA nor ICAN is primarily engaged in the dissemination of information. Plaintiffs also repeatedly claim that there is an urgency to inform the public about the control deficiency and that the media attention that *SEC v. Jarkesy* has garnered warrants expedited treatment, but they fail to show that anyone other than Plaintiffs themselves are currently interested in the control deficiency.

## II.    <u>ARGUMENT</u>

### A.  *De novo* review is appropriate here.

In discussing the legal standard applicable here, Plaintiffs take the unusual approach of responding to the SEC's position that a *de novo* standard of review applies by arguing that a "judicial deference" standard applies to a decision that was adverse to them. *See* Opp. at 6-8. Plaintiffs appear to make the argument not to actually persuade the Court to defer to the SEC but to put forward an argument that the relevant record is the record as it exists at the time this motion was filed rather than the record as it existed before the SEC at the time of its denial of Plaintiffs' expedited treatment request. *See* Opp. at 8. This conclusion, however, improperly meshes two issues: (1) what is the

1

relevant record on appeal and (2) whether review is *de novo*. Neither issue is complicated. The relevant record on appeal is the record before the agency when it denied expedited treatment, and a *de novo* standard of review applies here.

The FOIA specifically states that judicial review of an agency's denial of a request for expedited processing "*shall* be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added). In addition, Plaintiffs' own cited cases (Opp. at 7) show that "pursuant to the FOIA statute, judicial review of an agency's decision to grant or deny a request for expedited processing 'shall be based on the record before the agency at the time of the determination.'" *Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 436 F. Supp. 3d 354, 360 (D.D.C. 2020); *see also Elec. Priv. Info. Ctr. v. U.S. DOJ*, 322 F. Supp. 2d 1, 4 (D.D.C. 2003) ("my review is restricted to the record as it existed before the Justice Department at the time it denied the request for expedited processing"); *ACLU v. U.S. DOJ*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) ("the Court is restricted to the record before the agency at the time it denied the request for expedited processing").

Because Plaintiffs do not seek deference to the SEC's views, and because the SEC recognizes review is *de novo*, the applicable standard of review is not actually disputed. Nonetheless, some discussion is warranted to clarify the record. The FOIA provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA also provides a definition of "compelling need." 5 U.S.C.

§ 552(a)(6)(E)(v).  The SEC's regulations authorizing expedited treatment provide for such treatment in cases of compelling need and define "compelling need" using the language in the FOIA.  *Compare* 17 C.F.R. § 200.80(d)(7) *with* 5 U.S.C. § 552(a)(6)(E)(v).  Unlike some agencies, the SEC did not identify in its FOIA regulations any "other cases" in which expedited processing is warranted.  *See* 17 C.F.R. § 200.80(d)(7).

In cases concerning expedited treatment requests that are based on "other cases" addressed in agency regulations, some courts have deferred to agencies' interpretations of those regulations.  Plaintiffs' own cited cases (Opp. at 6-7) support this conclusion.  *See CREW*, 436 F. Supp. 3d at 359-60 (noting that "a decision based on a regulation promulgated by an agency, *as opposed to a statutory provision*, 'is entitled to judicial deference . . . as is each agency's reasonable interpretation of its own such regulations'" and "[a]pplying the well-established principles governing APA review" where DOJ's "promulgated regulations" mandated "a number of enumerated circumstances" for expedited treatment beyond the FOIA) (emphasis added); *Al-Fayed v. CIA*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001) (recognizing that courts defer to agency regulations, and agency's reasonable interpretations of those regulations, regarding expedited treatment where they "'expand the criteria for expedited access' beyond cases of 'compelling need'"); *Elec. Priv. Info. Ctr.*, 322 F. Supp. 2d at 4, 5 n.6 (stating that that the court "reviews application of the 'urgency to inform' standard *de novo*" but, with respect to DOJ's alternate ground for expedition, concluded that it "should review the agency's application of its 'government integrity' standard for 'reasonableness' rather than *de*

*novo*"); *ACLU*, 321 F. Supp. 2d at 29, 31 (applying "the reasonableness test" to "the agency promulgated media-related standard" and noting "[r]eview of the agency's decision that a request poses no 'compelling need' is *de novo*"); *see also Legal Eagle, LLC v. NSC Records Access & Info. Sec. Mgmt. Directorate*, No. 20-1732 (RC), 2021 WL 1061222, at *5 n.6 (D.D.C. March 18, 2021) (distinguishing *CREW* because there "the court did not conduct a *de novo* review of the record before the agency for denials made under the statutory framework").[1]

Because only the statutory "compelling need" test is at issue here, the Court should conduct a *de novo* review of the SEC's determination not to grant Plaintiffs' request for expedited treatment.  *See* Memo at 5; *see also Al-Fayed*, 254 F.3d at 301 ("district courts must review [agency] denials [of expedited processing under the FOIA] de novo, rather than defer to agency determinations").  Because a *de novo* standard

---

[1] Plaintiffs' other cited cases (Opp. at 6-7) have nothing to do with the FOIA.  *See United States v. Mead Corp.*, 533 U.S. 218, 221 (2001) (court considered "whether a tariff classification ruling by the United States Customs Service deserves judicial deference"); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 204 (2001) (court considered "application of [Federal Insurance Contributions Act] and [Federal Unemployment Tax Act] taxes to payments of back wages"); *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 505 (2009) (court addressed "adequacy of the Federal Communications Commission's explanation of its decision that [federal law] sometimes forbids the broadcasting of indecent expletives even when the offensive words are not repeated"); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 34 (1983) (court addressed "whether [federal agency] acted arbitrarily and capriciously in revoking the requirement in Motor Vehicle Safety Standard 208 that new motor vehicles produced after September 1982 be equipped with passive restraints to protect the safety of the occupants of the vehicle in the event of a collision").

applies, it is irrelevant whether the SEC's FOIA Office explained its rationale for denying expedited treatment in its decision letter.

### B. Plaintiffs have not demonstrated that they are primarily engaged in disseminating information.

Plaintiffs protest that "the full record before the SEC" showed that both ICAN and NCLA are "primarily engaged in disseminating information." Opp. at 8-17.[2] Their argument is belied by the record and relevant case law. *See* Memo at 7-11.

Plaintiffs focus on ICAN. *See* Opp. at 8-14. Contrary to Plaintiffs' assertion that "the SEC chooses to dwell on the single word 'litigation'" (Opp. at 9, 10), the Plaintiffs' own FOIA request shows that ICAN is a legal advocacy organization, and not an organization primarily engaged in disseminating information. Plaintiffs concede, as they must, that the FOIA request describes ICAN as "'a nonprofit public interest litigation organization dedicated to breaking down barriers to entry to capital markets and pushing back on overreach by the SEC.'" Opp. at 9; *see also* ECF 9-1 at ¶13; Ex. A at 3. The FOIA request also states that, to the extent ICAN "disseminates information to the public," it does so about legal subjects, specifically "unconstitutional statutes, legal action and conduct by the SEC that exceeds its statutory authority and the confines of the U.S. Constitution." ECF 9-1 at ¶13; Ex. A at 3. The FOIA request further explains that "[a]s a part of [its] mission, ICAN filed an amicus brief in the *Jarkesy* case." *See id.* In the

---

[2] Plaintiffs also ask that the Court take into consideration "the underlying issues at play which extend far beyond just the Control Deficiency and go to broader debates over administrative power and abuse generally" (Opp. at 9), but Plaintiffs provide no explanation for how these purported "issues" have any relevance to the Court's analysis of whether ICAN and NCLA are primarily engaged in the dissemination of information.

FOIA request, Plaintiffs do not claim that ICAN is a media organization or that ICAN's primary mission is to disseminate information. While the FOIA request states that ICAN is "primarily engaged in disseminating information about actual or alleged Federal government activity" (Ex. A at 8), Plaintiffs do not show that disseminating information outside of their litigation activities is their primary mission; rather, they argue that ICAN can "have multiple main functions." Opp. at 10. Courts, however, are to "narrowly construe[]" the category of organizations that primarily engage in disseminating information, and "must be cautious in deeming non-media organizations as persons primarily engaged in information dissemination." *Century Found. v. Devos*, 18-cv-1128(PAC), 2018 WL 3084065, at *5 (S.D.N.Y. June 22, 2018) (internal quotations omitted).[3] Courts have denied expedited processing to groups engaged in both litigation and information dissemination. *See ACLU of N. Cal. v. Dep't of Justice*, No. 04-4447 PJH, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (noting that "while dissemination of information may be *a* main activity of ACLU-NC, there is no showing that it is *the* main activity" and disagreeing that "two or more activities could be 'primary'") (emphasis in original). Plaintiffs' request shows that NCLA and ICAN focus

---

[3] Plaintiffs incorrectly stated that the court in *Century Foundation* "merely states that mission statements alone are not dispositive – one way or another." Opp. at 9. The court actually said that "mission statements such as [the plaintiff's] that do not specify whether information dissemination is the organization's primary activity fail to satisfy the test." *Century Found.*, 2018 WL 3084065, at *5. In *Century Foundation*, the FOIA requests "alleged that '[The Century Foundation ("TCF")] is a non-partisan think-tank. . . . TCF's mission is to foster opportunity, reduce inequality, and promote security at home and abroad. TCF uses the information it gathers, and its analysis of it, to educate the public through reports, social media, press releases, and regulatory comments to government agencies.'" *Id.*

on legal work and any dissemination of information is ancillary to that primary work. ECF 9-1 at ¶25, Ex. A at 6 ("[b]oth NCLA and ICAN are involved in collection and dissemination of information involving the SEC and are both involved in legal advocacy of constitutional rights by those impacted by SEC regulation and litigation").

Plaintiffs claim repeatedly that the SEC should know that "NCLA and ICAN do far more information dissemination than litigation." Opp. at 1; *see also id*. at 10-13. As evidence for this assertion, Plaintiffs point to two paragraphs of their FOIA request (Opp. at 10-11, 15), but their allegations do not show that NCLA and ICAN are primarily engaged in disseminating information. Plaintiffs emphasize in their FOIA request only that NCLA and ICAN have the ability and intention to publish information on their websites: "NCLA and ICAN have the ability to analyze, explain and disseminate the requested information broadly," "both organizations post and create expert analysis and original content regarding the operations and activities of the SEC (and in the case of NCLA, other agencies) and the results of their respective legal advocacy," "[b]oth organizations publish content and analysis regularly through their respective websites," and "NCLA and ICAN intend to publish information from requested records." Opp. at 10-11 (i, ii, iii).[4] Statements that show that an entity can and does provide information do

---

[4] Not only do Plaintiffs reference the "legal advocacy" of NCLA and ICAN (Opp. at 10 (i)), but their FOIA request also details that NCLA's and ICAN's information dissemination is about legal subjects. ECF 9-1 at ¶12 ("NCLA has issued multiple articles and analyses to the public regarding [the Cochran, Lucia, and Jarkesy] cases, SEC administrative adjudication, and the Control Deficiency."); *id.* at ¶13 (ICAN "has disseminated reports and analyses regarding [the U.S. Constitution and *Jarkesy*] to the public").

not show the entity is primarily engaged in disseminating information.  A court should

not permit "any organization with a website, newsletter, or other information distribution

channel to qualify as primarily engaged in disseminating information."  *Landmark Legal*

*Found. v. EPA*, 910 F. Supp. 2d 270, 276 (D.D.C. 2012).  Also, mere intention to share

the records in the future is not enough to satisfy NCLA's and ICAN's burden.  *See Allied*

*Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263, at *4

(D.D.C. May 4, 2017) (finding insufficient statement that "'[plaintiff] will use the

information gathered, and its analysis of it, to educate the public through reports, press

releases, or other media. [Plaintiff] will also make materials it gathers available on our

public website'" and noting that "[w]ere a statement of the type proffered by Plaintiff to

suffice, then *any* type of organization could qualify under the statute by merely

representing that it intended to engage in information dissemination with respect to the

fruits of its FOIA request") (emphasis in original).

     Further, Plaintiffs rely on ICAN's website to argue that it is "a site of record"

focused on the SEC.  *See* Opp. at 11-12.  Initially, as explained *supra*, Plaintiffs bear the

burden of showing that expedition is appropriate, and review of an agency's denial of a

request for expedited processing is based on the record before the agency at the time of

the determination.  Plaintiffs' FOIA request mentioned ICAN's and NCLA's websites

twice in two consecutive sentences but, contrary to Plaintiffs' claim (Opp. at 11, 15),

Plaintiffs did not invite the FOIA Office to visit those websites for more information

about those entities, including about anything related to whether they primarily

disseminate information.  *See* Ex. A at 7 (referencing websites in context of "intent and []

ability to convey [] information"). Plaintiffs point to no authority requiring the FOIA Office to look at ICAN's and NCLA's websites and no evidence that the FOIA Office did so.

Even if Plaintiffs' websites were part of the record before the Court, they do not help Plaintiffs. ICAN's homepage states that ICAN "is a nonprofit public interest litigation organization" that "serv[es] as a legal advocate and voice for small investors and entrepreneurs." *Homepage*, ICAN, https://www.icanlaw.org/ (last visited May 1, 2024). In the homepage, the "More About ICAN" dropdown contains links to "Cases" and "Amicus Briefs," which indicate legal work. *See id.* The "Cases" page notes that ICAN's founders have spent "decades of litigating cases for and against the [SEC] and other agencies." *Cases*, ICAN, https://www.icanlaw.org/cases (last visited May 1, 2024). It also states that "[a]s a nonprofit, public interest law firm, ICAN identifies cases where it can have an impact and works to ensure that its clients have high quality representation at little or no cost." *Id.* The "Amicus Briefs" page lists and links to over 20 amicus briefs. *Amicus Briefs*, ICAN, https://www.icanlaw.org/amicusbriefs (last visited May 1, 2024). The "About ICAN" page repeats that "ICAN is a nonprofit public interest litigation organization dedicated to serving as a legal advocate" and adds that "ICAN is developing a precedent-based legal bulwark against overreach by the" SEC. *About ICAN*, ICAN, https://www.icanlaw.org/about-3 (last visited May 1, 2024). Plaintiffs reference the "Press section" of the website (Opp. at 11 & n.6), which lists where ICAN has been mentioned in the media, largely relating to ICAN's involvement in litigation. *See Press Mentions*, ICAN, https://www.icanlaw.org/general-8 (last visited May 1, 2024)

(including recently, among others, March 8, 2024 entry about "ICAN appeal" in litigation, January 30, 2024 entry about "ICAN's pro bono litigation efforts," and November 29, 2023 entry about ICAN's amicus brief).

Plaintiffs further argue that the FOIA Office should have known that "ICAN's primary function was and is to serve as the cite [sic] of record for disseminating information on SEC activity" because of "prior and extensive dealings with all of the Plaintiffs in this action." Opp. at 12-13.[5] Plaintiffs provide only bare details about those "dealings." *See* Opp. at 12 (referencing Plaintiffs' prior FOIA requests[6] and litigations). And the limited information they provide shows ICAN's legal advocacy focus, as Plaintiffs reference "Plaintiffs' (including ICAN's) other litigation with the SEC" (Opp. at 12) and state that "ICAN has been involved in twenty four federal actions, twenty three of which involve the SEC" and that, "with the exception of FOIA actions and two other matters," ICAN filed "amicus briefs" in those cases (Opp. at 13). Plaintiffs attempt to

_____

[5] Plaintiffs' reliance on *Del. Dep't of Nat. Res. & Env't Control v. U.S. Army Corp of Eng'rs*, 722 F. Supp. 2d 535 (D. Del. 2010) (Opp. at 13, 19 & Plaintiffs' Response to Defendant's Statement of Undisputed Facts, ECF 10-2), to suggest that any information available to the SEC was part of the record before the SEC's FOIA Office when it denied expedited processing is misplaced. The court there focused on what information was before the agency decisionmakers, as opposed to what was before the agency as a whole. *Id.* at 541. The court recognized that "'interpreting the word "before" so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless.'" *Id.* (quoting *Fund for Animals v. Williams,* 245 F. Supp. 2d 49, 57 n.7 (D.D.C. 2003)).

[6] Plaintiffs point to no evidence that Plaintiffs' prior FOIA requests say anything about NCLA's and ICAN's purported primary functions as disseminators of information. *See* Opp. at 12.

minimize ICAN's litigation focus and to claim that "ICAN's amicus activity" actually "is a natural outgrowth of ICAN's reporting and analysis functions" (Opp. at 13), but that attempt is severely undermined by a plain reading of Plaintiffs' FOIA request. *See* Memo at 7-11.[7]

Plaintiffs also argue that NCLA is primarily engaged in the dissemination of information by emphasizing particular parts of their FOIA request and ignoring others. *See* Opp. at 14-16.  In their FOIA request, however, Plaintiffs describe NCLA first as "a nonpartisan, nonprofit civil rights group" before parroting the legal standard for expedited processing.  ECF 9-1 at ¶12.  The FOIA request further explains that NCLA uses litigation to disseminate information and states that NCLA represented Cochran and Lucia in addition to filing an amicus brief in *Jarkesy*.  *Id.*  The request also states that NCLA and ICAN "are both involved in legal advocacy of constitutional rights by those impacted by SEC regulation and litigation" (ECF 9-1 at ¶25; Ex. A at 6) and "[t]he Requesters are all involved in current or concluded cases that were directly at issue in the Control Deficiency" (ECF 9-1 at ¶26; Ex. A at 6).

Plaintiffs also point to NCLA's website and claim that both NCLA and ICAN "provide[] several expert analyses monthly."  Opp. at 15.  Plaintiffs provide no support for their position that an entity being quoted in the media is a primary disseminator of

---

[7] Contrary to Plaintiffs' assertions (*see* Opp. at 11, 12, 15), the SEC quoted ICAN's and NCLA's websites once in their opening brief (*see* Memo at 8 n.2).

information under the FOIA.  *See* Opp. at 15-16.[8]  Like ICAN's website, NCLA's

website is replete with evidence that NCLA is primarily a legal advocacy organization.

Indeed, Plaintiffs point to "a recent U.S. Supreme Court case involving the SEC" on

NCLA's "landing page" (Opp. at 15-16) but neglect to note that Michelle Cochran is

NCLA's client (*Homepage*, NCLA, https://nclalegal.org (last visited May 1, 2024)).

Additionally, NCLA's "Frequently Asked Questions" page asks, "How does NCLA

choose its cases or take legal Action?" and answers "NCLA is unique in that we only

focus on cases where the Administrative State violates the civil liberties of Americans."

*Frequently Asked Questions*, NCLA, https://nclalegal.org/faq/ (last visited May 1, 2024)

(also referencing "our attorneys" and "NCLA's public-interest litigation and other *pro*

*bono* advocacy represent[ing] clients with standing to sue government agencies").

NCLA's mission page states that "NCLA's public-interest litigation and other pro bono

advocacy strive to tame the unlawful power of state and federal agencies," that "NCLA

files original lawsuits and amicus curiae briefs," and that "[t]hese cases cut across

multiple state and federal agencies."  *Mission*, NCLA, https://nclalegal.org/about (last

visited May 1, 2024).  NCLA also has a "Legal Action" drop down tab on its website, its

"Case Summaries" page includes over 40 cases and over 40 "closed cases," and its

"Amicus Briefs" page references over 20 cases.  *Case Summaries*, NCLA,

https://nclalegal.org/cases-summaries-2 (last visited May 1, 2024); *Amicus Briefs*, NCLA,

---

[8] Plaintiffs again cite *Judicial Watch v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) (Opp. at
15 n.7; Memo at 13 n.5), but that case analyzed how "the requester [would] convey the
information to the general public" only in the context of fee waivers.  *See Judicial Watch*,
326 F.3d at 1312, 1314.

https://nclalegal.org/amicus-briefs (last visited May 1, 2024). NCLA's "Press Releases" page lists NCLA's numerous litigations and amicus briefs. *Press Releases*, NCLA, https://nclalegal.org/press-releases (last visited May 1, 2024). Similarly, Plaintiffs' referenced "In the News" page (Opp. at 15 n.8) shows NCLA's appearances in the media concern legal issues and NCLA litigations. *See In the News*, NCLA, https://nclalegal.org/in-the-news (last visited May 1, 2024).

Finally, Plaintiffs' cited cases (Opp. at 10, 12) are inapposite or support the conclusion that ICAN and NCLA do not primarily engage in information dissemination. *Protect Democracy Project, Inc. v. U.S. DOD*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (organization "likely" primarily engaged in disseminating information where requests noted, among other things, "that its 'core mission . . . is to inform public understanding on operations and activities of government'"); *Allied Progress*, 2017 WL 1750263, at *4-5 (organization "failed to establish that it is a person primarily engaged in information dissemination" where "[a]t most, the statement [in the FOIA requests] relays Plaintiff's intentions with respect to the materials that it seeks to obtain via the FOIA Requests"); *Landmark*, 910 F. Supp. 2d at 276 (organization did not show it was primarily engaged in dissemination of information where it stated that "'*as part of* its mission as a tax-exempt, public interest law firm, Landmark *investigates, litigates*, and publicizes instances of improper and/or illegal government activity' and that '[a]*mong* [its] primary activities is to disseminate to the public about the conduct of governmental agencies'"); *Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (organization's

stated "mission is to serve as the site of record for relevant and up-to-the minute civil rights news and information").

Plaintiffs also list ten cases they claim support their arguments (providing explanatory information only about two of them[9]) (Opp. at 16-17), but, despite Plaintiffs' claim, those cases largely did not involve parties "with litigation and advocacy functions" and/or are distinguishable from the present circumstances. *Austin Sanctuary Network v. U.S. Immigr. & Customs Enf't*, 20-cv-01686 (LJL), 2022 WL 4356732, at *4, 6 (S.D.N.Y. Sept. 19, 2022) (referring to expedited processing claim in complaint and to prior granting of "letter motion for an order expediting the due date for the first production" but addressing agency's searches for and withholdings from records, not expedited processing); *Protect Democracy Project, Inc. v. U.S. DOJ*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020) (finding organization "likely" primarily disseminated information where its FOIA request "noted that its 'purpose' was to 'gather information of potential interest to a segment of the public, use its editorial skills to turn the raw materials into distinct work, and distribute that work to an audience'" and, notably, "at least one other court in this District ha[d] recently found that Protect Democracy 'easily' satisfies the requirement"); *Brennan Ctr. for Justice at NYU Sch. of Law v. DOC*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (organization described itself "as 'a non-partisan law and public policy' group that 'regularly writ[es], publish[es], and disseminat[es] information'

---

[9] Plaintiffs quote portions of the websites belonging to two plaintiffs in these cases (*see* Opp. at 17 n.10-11), but provide no evidence that the information Plaintiffs acquired by visiting these websites in April 2024 reflects the activity of those plaintiffs at the time of the courts' decisions in 2012 and 2017.

and maintains an online library of thousands of articles" and defendants did not dispute that organization was primarily engaged in disseminating information); *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, 419 F. Supp. 3d 82, 95 (D.D.C. 2019) (court did not address whether entity was primarily engaged in the dissemination of information); *Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 298 (court said nothing about organization's legal work, and organization noted in FOIA requests "that its 'core mission . . . is to inform public understanding on operations and activities of government'"); *Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 870 F. Supp. 2d 70, 78-85 & n.14 (D.D.C. 2012) (court addressed agency's withholdings under FOIA exemptions and only mentioned expedited treatment in footnote without analyzing whether agency had appropriately granted such treatment); *Elec. Priv. Info. Ctr. v. U.S. DOJ*, 416 F. Supp. 2d 30, 36-42 (D.D.C. 2006) (court did not analyze whether requester was primarily involved in information dissemination because parties did not dispute that issue); *Elec. Priv. Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 6, 15 (D.D.C. 2003) (finding requester was entitled "to preferred fee status under FOIA" where "given its publication activities, [requester] satisfie[d] the definition of 'representative of the news media'"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (noting that "government's position regarding the issue [of primary dissemination of information] [wa]s left unclear" and citing another case where plaintiff had already been deemed a primary disseminator of information); *Ctr. for Nat'l Sec. Studies v. U.S. DOJ*, 215 F. Supp. 2d 94, 97-98, 101 (D.D.C. 2002) (agencies *had granted* requesters' expedited treatment request and court addressed searches for and withholdings from records).

Despite Plaintiffs' protestations and recasting of their FOIA request and websites, the record before the FOIA Office when it assessed Plaintiffs' expedited treatment request was clear that NCLA and ICAN are primarily legal advocacy organizations, not disseminators of information. *See* Memo at 7-11. Any sharing of information is incidental to this primary function. *See id.*

### C. Plaintiffs have not demonstrated that there is an urgency to inform the public concerning SEC activity.

Even if the Court finds that NCLA and ICAN are primarily engaged in the dissemination of information, Plaintiffs are not entitled to expedited treatment of their request because they have not shown any urgency to inform the public about the control deficiency. *See* Memo at 11-16. Plaintiffs' repeated claims of "media interest" in the control deficiency without any supporting evidence do not make it so. *See* Opp. at 17-24.

As the SEC stated in its opening brief (Memo at 11-12), in considering whether a FOIA requester has shown an urgency to inform, courts look to "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. Although Plaintiffs generally discuss whether there is an urgency to inform the public about the control deficiency, focusing on media interest they claim is relevant (Opp. 17-21), and then separately address the three factors from *Al-Fayed* (Opp. at 22-

16

24), courts consider media interest as part of their analysis of the three factors,[10] and

Plaintiffs' discussion of media interest relates primarily to the first *Al-Fayed* factor,

"whether the request concerns a matter of current exigency to the American public."[11]

Plaintiffs have not shown that the control deficiency is a matter in which the

American public has expressed any sort of widespread interest.  Plaintiffs point to no

evidence of media interest in the control deficiency other than the two articles they

included in their FOIA request.  *See* Opp. at 17-19, 21-23.  Plaintiffs' reference to two

articles from 2023[12] about the control deficiency (ECF 9-1 at ¶¶20, 21) does not satisfy

Plaintiffs' burden to show "that records are 'the subject of a currently unfolding [news]

story.'"  *Treatment Action Grp. v. FDA*, No. 15-cv-976 (VAB), 2016 WL 5171987, at *8

(D. Conn. Sept. 20, 2016).[13]  While Plaintiffs suggest they only need to point to a

---

[10] Indeed, Plaintiffs' cited cases (Opp. at 17-18) show that courts consider news articles and other media attention in their analysis of the three *Al-Fayed* factors.  *See Elec. Priv. Info. Ctr.*, 419 F. Supp. 3d at 95 (referencing "[e]vidence such as news articles and other contemporary documents" in combined analysis of current exigency and compromise of a significant recognized interest factors); *Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 299 (discussing "widespread media attention" in "nationwide 'exigency'" factor analysis).

[11] Plaintiffs suggest that the SEC's "own regulatory standard for expedited processing" is different than the FOIA standard and claim that "the SEC has raised [its] standards ex-post."  Opp. at 22.  As explained *supra*, the SEC's expedited processing regulation mirrors that of the FOIA.  Additionally, the SEC cited its expedited processing regulation in its November 14, 2023 denial of Plaintiffs' request for expedited treatment.  *See* ECF 9-1 at ¶6.

[12] *See* Opp. at 23 n.15, 24 n.16 (citing to the articles).

[13] Plaintiffs claim "Congress itself was interested" in the control deficiency but has provided no details about the timing or subject of Congress's "interest."  *See* Opp. at 19. Plaintiffs also emphasize "that the SEC itself had found the Control Deficiency important

"handful of articles" (Opp. at 23), in the case they cite, the court found that plaintiffs met the "agency promulgated media-related standard," a standard the SEC has not adopted, based on articles "published in a variety of publications" that "repeatedly reference [] ongoing national discussion" as well as a prior FOIA request "incorporated by reference" that "cited over a dozen additional news articles." *ACLU*, 321 F. Supp. 2d at 31-32. Plaintiffs guess that "but for the SEC's tight grip over the records and associated narrative, the already substantial media interest would be still greater" but provide no support for that assertion. Opp. at 18.

Recognizing the absence of any recent articles showing any current interest in the control deficiency, Plaintiffs argue that their FOIA request has "adequate nexuses" with *SEC v. Jarkesy* and "the broader debate over agency overreach," both subjects which they claim have attracted media attention. Opp. at 18, 20-21.[14] Plaintiffs, however, do not and cannot show a sufficient connection between the issues in which there is public

---

enough to inform both the 5th Circuit and U.S. Supreme Court about it" (Opp. at 19), but there is no evidence that the SEC's providing that information in then-active litigation reflects media interest or a "breaking news story of general public interest." *Treatment Action Grp.*, 2016 WL 5171987, at *8.

[14] The cases Plaintiffs cited to support their argument that "[t]he fit between the request and the matter of 'widespread and exceptional' media interest need not be exact - mere reasonableness suffices" are distinguishable. Opp. at 18, 23. *Brennan Ctr.*, 498 F. Supp. 3d at 98 (court disagreed with agencies' argument that part of request was "'far broader' than any 'widespread and exceptional' interests at stake" because part "still [sought] records 'relating to the 2020 Census,' which" met agency's "'widespread and exceptional interest' ground"); *Bloomberg L.P. v. U.S. FDA*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (the "fit" the court addressed there was about whether "federal government activity" included "information provided to the FDA in response to an FDA-initiated inquiry").

interest and the control deficiency.  Plaintiffs' FOIA request seeks nine categories of records.  *See* ECF 9-1 at ¶3.  The particular subjects include "the person or persons who discovered the Control Deficiency," all "communications regarding the circumstances that led to discovery of the Control Deficiency," "[a]ll communications" between the SEC and their external consultants, and "all documents related to and communications with the SEC's Office of Inspector General."  *See id.*  In their request, Plaintiffs explained that it was "designed to capture records that will reveal the breadth of the Control Deficiency, how the data breaches occurred and by whom, how the data breaches were discovered, what information was breached and whether the evidence supports the SEC's claim that the data breaches did not affect the pending cases."  ECF 9-1 at ¶27.

Plaintiffs have not explained how details about the discovery of and inquiry regarding the control deficiency would inform public consideration of the issues the Supreme Court is considering in *Jarkesy* or that are being debated more generally about the "administrative state" (an argument Plaintiffs did not mention in their FOIA request). They have not identified any specific issues in *Jarkesy* to which the control deficiency is relevant or explained why the Supreme Court might consider the control deficiency in addressing the issues before it.  Plaintiffs' cited article from 2023 (Opp. at 20 n.13) that addresses *Jarkesy* makes no mention of the control deficiency and states that at issue in that case is whether the SEC's "in-house tribunal [of administrative law judges] violates [defendants'] Seventh Amendment right to have a jury trial."  Jack Fitzhenry & GianCarlo Canaparo, *3 Supreme Court Cases Could Shake Up the Administrative State*, HERITAGE FOUNDATION (Aug. 29, 2023), https://www.heritage.org/courts/commentary/3-

supreme-court-cases-could-shake-the-administrative-state.  Similarly, Plaintiffs say that

"the term 'administrative state' immediately returns hundreds of news and commentary

entries" and that "hundreds of news articles [are] returned by an internet search for

'Jarkesy.'"  Opp. at 21.  Plaintiffs have not shown any indication, however, that the

control deficiency is mentioned in any of those articles.  *See Elec. Priv. Info. Ctr. v.*

*DOD*, 355 F. Supp. 2d 98, 102 (D.D.C. 2004) ("The fact that Plaintiff has provided

evidence that there is some media interest in data mining as an umbrella issue does not

satisfy the requirement that Plaintiff demonstrate interest in the specific subject of

Plaintiff's FOIA request, the Verity K2 Enterprise software program."); *ACLU of N. Cal.*,

2005 WL 588354, at *12 ("news reports alone cannot provide evidence of 'current

exigency to the American public' or 'widespread and exceptional media interest' if they

do not refer to the exact subjects of the FOIA request").

Unlike here, Plaintiffs' cited cases (Opp. at 20) involve requests in which "the

events at issue [were] the subject of a currently unfolding story."  *Al-Fayed*, 254 F.3d at

311; *see also Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 64, 74-75

(D.D.C. 2006) (urgency found for records about visitors to Vice President Cheney and his

staff where that "information [was] of vital public interest for an upcoming congressional

election"); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 34,

37 (D.D.C. 2020) (court did not analyze "urgency to inform" under FOIA but issued

preliminary injunction ordering expedited processing of records "related to ICE's

response to the COVID-19 pandemic" where records would "'help guide on-the-ground

efforts that will directly impact detained immigrants' and 'likely influence public

discourse around ICE's handling' of the global pandemic"); *Brennan Ctr.*, 498 F. Supp. 3d at 91, 98-99 (urgency found for records "relate[d] to the 2020 United States census" because "the 2020 census and reapportionment processes [were] currently unfolding stories about federal government activity that [were then] the subject of public debate and discussion, but they [were to] largely conclude early next year").

Despite their claims of "outright media interest in the Control Deficiency both by themselves . . . and by numerous external and independent press outlets" (Opp. at 22), Plaintiffs identify no one other than themselves who are currently interested in the control deficiency. *See* Memo at 13-14. Indeed, though Plaintiffs claimed that their FOIA request was "designed to capture records relevant to the interest of the Supreme Court to have access to all pertinent information while deciding the issues pending in the Jarkesy case" (ECF 9-1 at ¶31), they concede that Jarkesy is "not the basis for expedition" (Opp. at 21). Thus, Plaintiffs cannot satisfy the first *Al-Fayed* factor.

Plaintiffs also cannot satisfy the second *Al-Fayed* factor. Rather than showing how "delaying a response [to their FOIA request] would compromise a significant recognized interest," Plaintiffs try to change the test and argue that "there is no question" that their request focuses on "government impropriety." Opp. at 23-24. Plaintiffs, however, do not explain how processing their FOIA request in the normal course would "compromise [any] significant recognized interest." Further, Plaintiffs' cited cases (Opp. at 23) are not applicable here. *See Cole v. FBI*, No. 13-cv-01205 (CRC), 2015 WL 4622917, at *4 (D.D.C. July 31, 2015) (granting agency's motion for summary judgment concerning FOIA exemption withholdings and not addressing expedited processing);

*Brennan Ctr.*, 498 F. Supp. 3d at 97 ("government integrity" analysis involved "widespread and exceptional" ground for expediting, not "compelling need" test, which is not available under SEC regulations).

Plaintiffs have not shown that there is an urgency to inform the public through the requested records, as there is no evidence that the FOIA request concerns a matter of current exigency to the American public, or that consequences of delaying a response would compromise a significant recognized interest. *See* Memo at 11-16.

### D.  No material facts are in dispute.

As a threshold matter, Plaintiffs did not provide a statement of material facts in support of their cross-motion for summary judgment as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact").  Indeed, Plaintiffs' "Procedural and Factual Background" section is in places unsupported by citations to the record, and Plaintiffs cited only to their exhibits and certain docket entries in support of their allegations. *See* Opp. at 3-5. As such, the SEC is unable to respond to the material factual assertions underlying Plaintiffs' cross motion.

In any event, Plaintiffs' Response to Defendant's Statement of Undisputed Facts, ECF 10-2 ("Response"), does not raise any genuine dispute of material fact sufficient to

defeat summary judgment. Plaintiffs purport to object to several SEC statements on various bases.

First, Plaintiffs complain that "information appears to be outside the personal knowledge of the declarant." Response ¶¶1, 2, 5, 6, 7, 15, 16. The Declaration of Adrienne Santos explains that Ms. Santos is a "FOIA Branch Chief . . . responsible for, among other things, coordinating and processing FOIA requests" and that, "[i]n making this declaration, [she] relied on [her] personal knowledge, or where [her] personal knowledge was lacking or incomplete, [she] relied on [her] review of records routinely maintained in the ordinary course of business or representations made to [her] by other SEC staff." ECF 9-2 at ¶¶1-2. The Declaration further states that "[a]s the FOIA Branch Chief who supervised the FOIA Office research specialist to whom Plaintiffs' FOIA Request No. 24-00460-FOIA was assigned, [she] oversaw the processing of Plaintiffs' FOIA request." *Id.* at ¶3.

Second, Plaintiffs repeat that "Plaintiffs and the undersigned counsel in this action are, different from those that were a party to the referenced FOIA request." Response ¶¶1, 2, 15, 16. This is not correct. The SEC understands that Plaintiffs' counsel in this action does not represent the various Plaintiffs in connection with other FOIA requests or other litigations, but Plaintiffs recognized in their own FOIA request at issue in this case that NCLA, ICAN, and Jarkesy have separately submitted prior FOIA requests to the SEC. *See* Ex. A at 4 ("NCLA made a FOIA request of the SEC for documents regarding the control deficiency on July 12, 2022."); *id.* ("Jarkesy filed a comprehensive request of the SEC for Control Deficiency records in September of 2022."); *id.* at 5 ("ICAN made a

FOIA request of the SEC for Control Deficiency documents on June 30, 2023.").  In any event, the fact that Plaintiffs are not represented in other litigations by their counsel in this case is irrelevant to the accuracy of the SEC's quoted portions of the FOIA request about Plaintiffs.  *See* Response ¶¶14, 23, 26, 31.

Finally, Plaintiffs repeat legal arguments that they make in their opposition, which are addressed above.  *See, e.g.*, Response ¶¶1, 2, 10-16, 20-23, 26-28, 31-32 (addressing what information was purportedly available to the SEC when it denied Plaintiffs' request for expedited treatment); ¶¶6, 10-14, 20-26 (addressing entitlement to expedited processing and "Plaintiffs' basis for its request of expedited processing"); ¶¶20-23, 27, 31-32 (asserting "media interest" in control deficiency).

## III.    CONCLUSION

For the foregoing reasons, and the reasons described in its opening papers, the SEC respectfully requests that the Court grant the SEC's motion for partial summary judgment and deny Plaintiffs' cross motion for partial summary judgment.

Dated:  May 2, 2024                          Respectfully submitted,

                                             /s/ *Alexandra Verdi*
                                             Alexandra Verdi
                                             NY Reg. No. 5480934
                                             S.D. Tex. No. 3821611
                                             Office of the General Counsel
                                             U.S. Securities and Exchange Commission
                                             100 F Street, NE
                                             Washington, D.C. 20549
                                             Telephone: (202) 551-5057
                                             Fax: (202) 772-9263
                                             verdim@sec.gov

                                             *Counsel for Defendant*
                                             *U.S. Securities and Exchange Commission*